# UNITED STATES DISTRICT COURT
# [WESTERN] DISTRICT OF WISCONSIN

NATHAN PAAPE [DOC #605650-A]_____, Petitioner,
**Full Name** *(under which you were convicted)*


#605650_____
**Prisoner Number**

Columbia Correctional Institution
**Place of Confinement**

**Docket No.** 18-cv-1028-wmc
*(to be supplied by Clerk)*

vs.


SUE NOVAK, CCI WARDEN_____, Respondent.
**Authorized Person Having Custody of Petitioner**

---

## PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2254
## BY A PERSON IN STATE CUSTODY

---

**Caution:** THIS IS NOT THE FORM TO BE USED, IF YOU CLAIM THAT YOUR FEDERAL SENTENCE OR CONVICTION IS UNLAWFUL, OR IF YOU ARE A PRETRIAL DETAINEE CHALLENGING YOUR PRECONVICTION CUSTODY, A FEDERAL PRISONER CHALLENGING THE EXECUTION OF YOUR SENTENCE OR AN ACTION TAKEN BY THE BUREAU OF PRISONS, OR A PERSON IN CUSTODY CHALLENGING AN IMMIGRATION-RELATED ORDER.

**I.  SUBJECT OF THIS PETITION**

A. Name and location of the state court that entered the judgment of conviction which you are challenging

Sheboygan County Circuit Court, Branch #02.

[The Honorable Timothy Van Akkeren, Presiding Judge]

Sheboygan County Courthouse, 615 N. 6th St., Sheboygan; Wis. 53801

B. Criminal docket or case number  2012-CF-00512

C. Date of the judgment of conviction  August 13, 2013

D. Date of sentencing  August 13, 2013

E. Length of sentence  Life, With Extended Supervision Eligibility In 2043

F. In this case, were you convicted on more than one count or of more than one crime?

☐ Yes       ☒ No

G. Identify all crimes of which you were convicted and sentenced in this case

Wis. Stats., §940.01(1)(a) 1st-Degree Intentional Homicide;

Wis. Stats., §[939.05] As A Party To A Crime.

H. What was your plea? *(Check one)*

☒ Not guilty      ☐ Guilty      ☐ Insanity plea      ☐ Nolo contendere *(no contest)*

If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to?

I. If you went to trial, what kind of trial did you have? *(Check one)*

☒ Jury      ☐ Judge only

**SUBJECT OF THIS PETITION - *continued***

    J.  Did you testify at a pretrial hearing, trial, or a post-trial hearing?

        **xⅩ** Yes        ☐ No

        If yes, state the type(s) of hearing or proceeding

        Jury Trial For The Defense

## II.  DIRECT STATE APPEAL OF CONVICTION

    A.  *Did you appeal from the judgment of conviction?*

        **xⅩ** Yes        ☐ No

        If yes, attach the decision(s) that resolved your appeal and answer the following questions:

        1.  Date of filing appeal **December 2015**

        2.  Grounds raised Under Wisconsin Statutes §§973.014(1g)(a)2 & 302. 114, Paape's Life Sentence, With Eligibility For Release In 30-Years A De Facto Life Sentence In Violation Of The 8th Amendment & Due Process Clauses Of The 5th & 14th Amendments; 2.] Does Wisconsin Statute §302.114 Renders Paape's Life Sentence A De-Facto Life Sentence Because He Has No Meaningful Opportunity For Release Thirty Years Into The Future.

        3.  Result Court Of Appeals, District II, Affirmed Conviction/Sentence.

        4.  Date  June 28, 2017 (Attachments: #1-1/J).

    B.  Did you seek further review by the highest state court?

        **xⅩ** Yes        ☐ No

        If yes, attach the decision(s) that resolved your petition for review and answer the following questions:

        1.  Date of filing of petition for review **July 28, 2017**

        2.  Grounds raised 1.] Under Wisconsin Statutes §§973.014(1g)(a)2 & 302.114, Paape's Life Sentence, With Eligibilty For Release In 30-Years Under Extended Supervision Is A De Facto Life Sentence In Violation Of The 8th Amendment And the Due Process Clauses Of The 5th & 14th Amendments; 2.] Wisconsin Statute §302.114 Renders Paape's Life Sentence A De Facto Life Sentence Because He Has No Meaningful Opportunity For release 30-Years Into Future.

        3.  Result  *State Supreme Court, Declined To Exercise Review Authority.*

        4.  Date  October 09, 2017 (Attachment - #2).

**DIRECT STATE APPEAL OF CONVICTION -** *continued*

C.  Did you file a petition for certiorari in the United States Supreme Court?

☐ Yes      x☒ No

If yes, attach the decision(s) that resolved your petition for certiorari and answer the following questions:

1.  Date of filing petition for certiorari ___ **None Filed** _____

2.  Grounds raised ___ **Not Applicable.** _____

_____

_____

3.  Result **N/A.** _____

4.  Date ___ **N/A.** _____

## III.  STATE POST-CONVICTION RELIEF OTHER THAN DIRECT APPEAL

A.  Other than the appeals listed above in Section II, have you previously filed any other state petitions, applications, or motions concerning **this** state judgment of conviction?

x☒ Yes      ☐ No

If yes, attach the decision(s) that resolved your application for state post-conviction relief and answer the following questions:

1.  Name of court Sheboygan County Circuit Court, Branch #02.

2.  Docket or case number  Case No. 12-CF-000512.

3.  Date of filing  **September 23, 2015 / (Amended); September 18, 2015 (1st).**

4.  Type of petition, application, or motion filed §974.02 Wis. Stats., 1st Appeal.

5.  Grounds raised 1.] Wisconsin's Original Court Jurisdiction Statute §938.183(1)(am), As Applied To Paape Violates The 8th Amendment Of The U.S. Constition; and 2.] Wisconsin's Original Adult Jurisdiction Statute §938.183(1)(am), As Applied To Paape, Violates The Equal Protection & Due Process Clauses Of U.S. Constitution.

6.  Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes      ☒ No

7.  Result Decision And Order Filed Denying Unconstitutionality Issues.

**STATE POST-CONVICTION RELIEF OTHER THAN DIRECT APPEAL** - *continued*

8. Date <u>November 10, 2015 (Attachments: #3-3/H).</u>

9. Did you appeal to the highest state court having jurisdiction over the action taken on your first state petition, application, or motion?

     ☒ Yes    ☐ No

B. If you filed a second petition, application, or motion, attach the decision and answer the following questions:

1. Name of court <u>None Filed</u>

2. Docket or case number <u>Not Applicable.</u>

3. Date of filing <u>N/A.</u>

4. Type of petition, application, or motion filed <u>N/A.</u>

5. Grounds raised <u>N/A.</u>

6. Did you receive a hearing where evidence was given on your petition, application, or motion?

     ☐ Yes    ☐ No

7. Result <u>Not Applicable.</u>

8. Date <u>N/A.</u>

9. Did you appeal to the highest state court having jurisdiction over the action taken on your second state petition, application, or motion?

     ☐ Yes    ☒ No

    <u>Not Applicable.</u>

C. If you filed a third petition, application, or motion, attach the decision and answer the following questions:

1. Name of court <u>None Filed.</u>

2. Docket or case number <u>Not Applicable.</u>

3. Date of filing <u>N/A.</u>

**STATE POST-CONVICTION RELIEF OTHER THAN DIRECT APPEAL-** *continued*

4. Type of petition, application or motion filed ___ Not Applicable/None Filed. ___

5. Grounds raised ___ Not Applicable. ___

6. Did you receive a hearing where evidence was given on your petition, application, or motion?

    ☐ Yes     ☒ No

7. Result ___ Not Applicable. ___

8. Date ___ N/A. ___

9. Did you appeal to the highest state court having jurisdiction over the action taken on your third state petition, application, or motion?

    ☐ Yes     ☒ No

## IV.  GROUNDS FOR RELIEF

For this petition, state **every** ground supporting your claim that you are being held in violation of the Constitution, laws, or treaties of the United States.  If you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

Attach additional pages if you have more than four grounds.  State the facts supporting each ground.

**CAUTION:** To proceed in the federal court, you must ordinarily first exhaust (*use up*) your available state-court remedies on each ground on which you request action by the federal court.

Ground One ___ Did The Wisconsin State Court(s) Judicial Review Of The Juvenile Age/Mental Capacity Issue, Give Nothing More Than Lip Service To The Procedural Due Process Protections Juvenile Defen-dants' Are Entitled During The Imposition Of Sentence Mandated Con-sideration Of Age Of Defendant And Explicit Facts Of Crime Commission.

Supporting **FACTS** *(Briefly summarize the facts without citing cases or law.)*

This is a Homicide, that was committed by Two(2) Thirteen(13) Year Old Juveniles, the Victim was the "Great-Grandmother of the Co-Defendant of this crime commission. The Facts document, that it was the Co-Defendant whom came up with the Ideal to commit this crime, because his Great-Grandmother "Was somewhat rich and could be killed for money" (Attachments: #4-4/B-C). Once this Ideal of a source of available Money took hold in the Brains of these Two(2) 13-Year Olds

**GROUNDS FOR RELIEF** - *continued*

the crimes actual commission took place later that same day, When
Co-Defendant Antonio D. Barbeau and Petitioner Paape went over to
the Great-Grandmothers residence. The 13-Year Olds had armed them-
selves with the only readily available weapons they could get their
hands on, with such being Bareau located a hatchet, and Paape found
a Hammer. The record reveals that once the Great-Grandmother, Bar-
bara Olson greeted the Two 13-Year Olds at her residence door and
then turned around for them to follow her into the residence, Co-
defendant Barbeau struck his Great-Grandmother, Barbara Olson with
the Blunt end of the Hatchet weapon, knocking her to the floor. The
evidence further documented that Co-Defendant Barbeau then struck
his relative several more times with the blunt end of the weapon.
During this assault Co-Defendant Barbeau called for Paape's to help
him, and only then did Paape strike the Victim twice in the head
with the hammer. While the Co-Defendant Barbeau using the sharp end
[Continued On Page #7/A]

If you did not exhaust your state remedies on Ground One, explain why.

Not Applicable.

Ground Two   Does The Operational Structure Of Wis. Stats. §302.114,
In Fact Constitute A "Sham" Early Release Possibility, In That It
Only Allows For An "Eligibility" Review Opportunity, Instead Of Any
Actual Release To Extended Supervision, Contrary To The Legislative
Promise Of Truth-In-Sentence, Actual Time  To Be Served Design?

Supporting **FACTS** *(Briefly summarize the facts without citing cases or law )*

It was submitted before the Wisconsin Post-Conviction (Attach-
ments; #3/C-E), as well the State Court Of Appeals, during this 1st
Appeal of Right (Attachments: #1/II-J, ¶¶19-23) in General and Explic-
it Issue submission. The requirement of Wis. Stats. §302.114, that a
Prisoner, in his Petition, without any Right Of Legal Counsel Assist-
ance must demonstrate to the Sentencing Court, that he is no longer
a "Danger to Society," to be considered from Prison under Extended
Supervision Release; without there being any actual operational guide-
line(s) and/or Criterion;  "Renders" this Statutory Scheme in its
actuality an impossibility for any pro se, unskilled prisoner to meet
Thus, via default, a de facto "Life Without Parole" in truth achieve-
ment, under the guise of being otherwise. The Wisconsin State Court
of Appeals, in its Last Decision at the State level on the Merits of
this Issue, asserted in response to the observation that; "His claim
would also require us to assume that the sentencing court would refuse
to fulfill its statutory obligation under WIS. STAT. §302.114(5)(cm)
to consider whether the inmate has proven that he or she "is not a

## GROUND ONE - [Supporting Facts] - Continued From Page #-7-:

of the hatchet, struck his Great-Grandmother, lodging the blade in skull, causing her death. Once it was realized that the Victim was deceased, Co-Defendant Barbeau then led Petitioner Paape on a search of the residence, resulting in the taking of some jewelry, a purse, and less than 200 Dollars in cash.

There is no question here, that this was a sad incident, that it was the very type of crime an inmature and childish person would be involved in. And yes, it was very Shocking to the "Community" in which it happen, for these type of crimes are not suppose to happen in the "White Enclaves of America," thus the moral outrage here was at an all time high. As the Sentencing Judge noted at Sentencing on the record that: "This is a very different type of homicide than the other type that I have described. This is clearly at the high end of severity and, but for the fact that this individual is a juvenile, I would be strongly considering the sentence of a life sentence with no possibility of parole." Then went on to acknowledge: "That is not a possibility based on United States Supreme Court rulings.."

This Sentencing Judge asserted position, that this crime was on the High End of Severity, was based upon his belief, that they should have used a gun to kill the victim, instead of her Great-Grandson hitting her 25-Times in the Head and Neck area with his Hatchet, with Petitioner Paape's being responsible for only 02-Hits out of the 27-Times the Victim is reported to have been struck. Two(2) Strikes that took place only after the Petitioner was called to do so by the "Dominate" personality of these Two Individuals. A further Issue, the Sentencing Judge had a problem with; explicitly holding: "You are looking at an individual here who obviously did not make the right choices on that particular day. I believe it's fully acknowledged that he is not the first person to have hit Ms. Olson, That indeed that was Mr. Barbeau. And he had the opportunity certainly at that point to say, this is not anything I can be a part of. This is something that goes far beyond any possible following of someone. That if, indeed, he was concerned about his own safety, take off and run at that particular point. Taller, longer legged than Mr. Barbeau. I think that instance here if he'd done that he would have gotten away.." This position assertion of what this least culpable of the two defendants should have done, fits into the Sentencing Judges initial personal belief assertion of: "Particular crime involved here is very high on the scale of seriousness and severe crimes, even within the scope of first degree intentional homicide. We hear so often now about gun violence, people using firearms to kill one another. A squeeze of a trigger and people die. And, indeed, there may be a lack of unreality, to the younger person in particular, to recognize the consequences of what happens from that squeeze of a trigger. When instead it is someone who is using a hammer or a hatchet to cause injury. This is up there."...

Yet, this position of the Sentencing Court, that the involvement of a Hammer and a Hatchet, because these Two 13-Year Olds could not get their hands on a Gun instead, is truly mind baffling, the Legislative Intent of the Increased Extended Supervision Re-

lease Date establishment allowance by the Sentencing Court Judge, was for the address of the "Most Unusual" Types of Intentional Homicide(s). The Jeffery Dalmer, whom the Bill was initiated in concern to, the dismemberment and eating of his victims, there was no desire to torture or prolong the victims agony here, it is simply two 13-Year old Kids, using the only weapons they could get their hands on, in carrying out this on the moment thought up crime commission. A fact so acknowledged by the Sentencing Court Judge, but yet disregarded in its entitled actual sentence imposition execution; "We have an individual here who, based on the testing that was done and the general information provided to the court concerning adolescent brain development, is someone who is easily manipulated, someone with a very strong need for acceptance, As a result of this it became increasingly easy to manipulate."

Yet, the Sentencing Court Judge's consideration to this most relevant information regarding this 13-Year Old, was to suppose: "We look at the situation as being one where you have an individual who is following. We look at an individual who is still an adolescent, there can be changes that will come up. Certainly we expect there will be changes. The question is, even as his executive brain function might improve, would he continue to be manipulated based upon other aspects of his personality. Would he continue to follow along with others in engaging in horrendous actions. we cannot tell; we will not know. No one can say at this particular time..

Then this Sentencing Court, concludes, that "Extended Supervision Eligibility" on his 45th Birthday, asserting: "In looking at this particular matter, I do find that there is less culpability on the part of Mr. Paape, but that is a small matter of degree in this particular instance. In looking at the nature here that the initial actions on the part of Antonio Barbeau, what led to what happen here, but that Mr. Paape followed. He followed in a way that no person should consider doing. In this instance then, looking at the minimum that there can be involved here to take into account the extreme seriousness of this offense, the Court would sentence the defendant to life imprisonment with eligibility for parole to be on December 2, of 2043. And that again would be based on his birth date. That would again take him to his 45th year." Then asserting in sentence Extended Supervision Release date establishment here, as; "The circumstances involved in this particular instance is one that does require this at a bare minimum."

Yet, after all this "SophisticaL" address of Petitioners' youthful age actuality involved here of being 13-Years Old at the time of the crime commission, his demonstrated reluctance to actualy participate in the homicide commission, the material fact he only struck the victim 02-Times out of the 27-Hits, with 25 from the Victims Great-Grandchild himself here as well the actual Killing blow. The noted "Rough Childhood" of the Petitioners existence at the time of the crime commission, and his extreme need to fit in, be liked that allowed him to be easily manipulated, then for the Court to impose a sentence of Only Three(3) Years Less Than the More Culpable Co-Defendant and Victims Great-Grandson, whom

was the ring leader of this terrible ideal, when the Wisconsin
State Legislature itself, has determined that a 20-Years Wait
for Eligibility for Extended Supervision, serves the needs for
Protection of the General Public in a First Degree Intentional
Homicide situation, is to make a mockery of this Life Sentence
Imposition actuality undertaking here.

Indeed, prior to 1984 an Act of First Degree Intentional
Homicide, resulted in a Parole Eligibility Date of 11-Years and
04-Months. But after 1984, it was raised to 13-Years and 04-
Months, with also the ability of the Sentencing Court to Raise
the Eligibility Date imposition, if Unique and Special Circum-
stances were found, such as Eating the Victims, or Torture of
the victim before death. Then, with the Legislature passing of
the Truth-In-Sentencing Laws in 1999, the Extended Supervision
Release "Right To Petition" Eligibility was raised to 20-Years,
with again the Sentencing Court authority to impose a greater
Eligibility Date allowance based upon specific findings that
the particular First Degree Intentional Homicide, was Unique in
its execution actuality, and victim treatment. I.e., Eating of
the victim and/or Torture before death (Attachment - #5), with
the Data regarding "Release" of Individuals serving Life Sentences
between 1980 and 1993 being approximately required to serve 13-
Years and 06-Months (Attachment - #5/A). Yet, the Sentence of
Like, with an Extended Supervision "Eligibility" Date of 26-Years
for this 14-Year Old Petitioner at the Time of Sentencing on
August 13, 2013 being "[Well Over]" Twice that Length. With the
primary justification for such a lengthy sentence service before
even becoming eligible to simply Petition for Extended Supervision
Release, being that the crime was not committed using a Firearm;
therefore it is somehow "Horrendous" in its happening in this Good
Community. (Sentencing Transcript 08/13/2013, Pages #42-51).

Now, with "Extended Supervision Release" Eligibility Dates,
are simply the "Opportunity" to Petition the Court for Possible
Release, the Defendant is still required to provide the Judge
some undefined demonstration that he no longer represents a threat
to the Public. Thus, why does it take 31-Years for this Petitioner
to have that opportunity, for this chance to "Demonstrate" he no
longer represents an unreasonable threat to the community, the pub-
lic at large. These additional 11-Years is the Total Length that
A Life Sentence, Parole Eligibility once required (Attachment - #5),
as a matter of fact, it is over twice the sentence served for a life
sentence at one time, whether that Homicide was committed with a Gun,
Knife, Hatchet, Hammer or Rock. Other than this crime being committed
by the Victims own Great-Grandson, what is the out of the normal of
Robbery/Burglaries that result in the Death of a Victim committed
in this Country regularly. There was no Torture to find out where
her vaulables were, there was no sexual assault, or sadist type
treatment of the Victim by Petitioner Paape's, indeed, he hit the
victim twice, out of the 27-Strikes she suffered, with them mainly
coming from the victims blood Great-Grandson, the Co-Defendant here,
of which Petitioner has no access to his Sentencing Transcript to
learn as to why he did what he did, including the striking of the
Killing blow. But here, Petitioner Paape's was entitled to his own

"Individualized" Sentencing address, that meaningfully took into account, his personal "Age" at the time of the commission of the Homicide, his actual commission involvement of the actual death of the victim, as well his "Role" in the crime initiation. Which here, the Court at Sentencing, personally determined that Petitioner role as; "I believe it's fully acknowledged that he is not the first person to have hit Ms. Olson, That indeed that was Mr. Barbeau" (Tr. 08/13/2013, Pp. #45). Then goes on to point out: "I am willing to accept that Mr. Paape was more the follower in this case" (Tr. 08/13/2013, pp. #46).

The Sentencing Judge next acknowledges on the record, that: "That the circumstances involved with regard to his upbringing is one that he was brought up without a father in his life. I've had dealings, certainly, with Mr. Paape's father as well. I have sentenced him in the past that obviously we had there. I dealt with him writing from prison with regard to the child support that he should have been paying for Mr. Paape and was not paying because he was incarcerated. ... Obviously, Mr. Paape did not have an easy time growing up. Letters that have been submitted to the Court on his behalf do talk about the very difficult times his mother had in being able to support him. That other family members assisted in that as they could. That he lost his grandmother while he was living with her. That indeed it was not an easy time for him" (Tr. 08/13/2013, Pp: #44-45).

The Sentencing Judge, in regarding to this "Due Process" Entitled "Facts Of Life" Consideration evidence of this particular 13-Years old defendant, responded here with: "That, of course, cannot justify his particular actions as he himself acknowledged on that date in September of 2012". Then goes on to assert: "We have an individual here who, based on the testing that was done and the general information provided to the court concerning adolescent brain development, is someone who is easily manipulated, someone with a very strong need for acceptance" (Tr. Pp: #45). Yet, the Sentencing Court Judge, in "Sophistical" reasoning assertion on the record, fails to in actuality give any "Weight" to the Defendants' extreme Youth Age of 13-Years Old, that the Defendant did not in fact strike the Killing Blow, or more than Two(2) Blows with the Round End of the Hammer, that left different type marks on the Victim, then the Hatchet employed to strike the Killing Blow, and at a minimum 11-Other Blows with the Sharp end of the Hatchet, after the 10 or so blows he had already inflicted prior to ordering Petitioner to also strike her with his hammer, which this easily manipulated individual did, striking her twice (Tr. 08/13/2013, Pp: #46).

Without Question, the Due Process Clause(s) of both the Fifth Amendment, as well the Fourteenth Amendment, Due Process Clause, mandate "Honesty in the Process," as so Acknowledge by Federal Law as clearly established by the United states Supreme Court, and so presented in Support hereof, in the accompanying "Memorandum Of Points and Authorities" to the §2254 Petition For writ Of Habeas Corpus. Indeed, it is acknowledged that a Defendant has a legitimate interest in the character of the procedure which leads to the imposition of sentence, even if he may have no right to object to

a particular result of the sentencing process.   Under Wisconsin "Life" Term(s), "Extended Supervision" Date establishment proce- dural process of the Sentencing Court, the "Fact" is long acknow- ledged, that "When interpreting this statute, one overarching principle must guide the court's analysis -- the legislature sets sentencing policy."

In setting the "Extended Supervistion Release" Eligibility Date, the "Factors that a sentencing court considers when imposing a sentence are the same factors that influence the determination of parole eligibility/extended supervision release considerations." Thus, in Wisconsin, Extended Supervision Release Eligibility Dates imposition are reviewed under the same standard as are other sen- tencing decisions. Now, the Extended Supervision Release Eligibil- ity dates, as pointed out here, has prior to 1984 been determined by the legislature as being 20-Years in length, as reasonable to satisfy the Nature of the Crime of 1st Degree Intentional Homicide, the Protection of the Public concerns involved therewith, and to properly address the gravity of the crime, within' this 20-Years Release Consideration Eligibility, the Legislature before 1984 determined that allowance of Statutory, as well as Discretionary "Good Time" receipts against that 20-Year Eligibility Time Frame was warranted, which then lowered the "Eligibility" date to 11-Years and Four-(4) Months (Attachment - #5)   Then, after 1984 "Crime And Punishment" evolved into a "Politics" Useful Tool, and the Release Eligibility Term for the then still in effect "Discretionary Parole" Life Term, was maintained at 20-Years, but the "Good Time" receipt was changed and the Eligibility date rose to 13-Years and Four(4) Months (Attachment - #5).

Then, in 1999 the Wisconsin State Legislature did away with "Discretionary Parole" Release in this State, under its involvement in the Federal Law, "Violent Offender Incarceration/Truth-in-Sentenc- ing Incentive (VOI/TIS) Grant Program" (Attachment - #6), which in- volved the elimination of "Good Time" receipts to Prisoners, and this 13-Years and 4-Months Release Eligibility leap to 20-Years Flat for "Extended Supervision Release Eligibility" Opportunity to peti- tion the Court (Attachments: #7-7/G). As this Attachment demonstrate this 13-Years Old Petitioner at the time of this Criminal incident, with the 32-Years "Eligibility" allowance is given a greater term of initial incarceration then any of the "Adult" Males and/or Females Sentenced after 1975 to Life Terms for 1st Degree Intentional Homic- ides (Attachments: #7-7/G), with a host of them involving commission details/facts equal to Petitioners, Party To A Crime involvement here, if not worse (Att-#7/¶¶14,15,24, and ¶53 to point out a few). Now, without much issue, Petitioner acknowledges that the Wisconsin Legislature as far back as 1984 had injected a provision in the Life Terms, Parole Eligibility provision, under Section §973.013(1) Wis. Stats., that noted: "In some instances, the absolute minimum parole eligibility date [13-Years and 04-Months, on the 20-Year Statutory Eligibility] may be inadequate for a convicted defendant sentenced to life imprisonment. [For example, repeated criminal behavior or a particularly gruesome criminal offense may warrant a parole eligibil- ity date later than the absolute minimum]". The Legislature addition- ally pointed out, "That the sentencing court is in a better position

to assess the particular circumstances of each case and each convicted defendant, the legislature permits the sentencing court, under sec. 973.014(2) to use its discretion to set a parole eligibility date later than the absolute minimum where the circumstances warrant." Pointing out further, that "The parole eligibility date determination is, thus, an essential and integral part of the court's sentencing decision.."

Yet here, the Sentencing Court Judge, simply gave "Lip Service" to the "Age" Factor of the Defendant, contrary to the clearly establish "Important" consideration thereto mandated by United States Supreme Court holdings thereon, especially a crime involving a 13-Years Old defendant at the time of the crime commission and his arrest within hours after the crime commission. As the law of the Seventh Circuit has pointed out, I assert should govern this Ground One review here; "Since even a judge with the strongest distaste for a defendant is hardly likely to blurt out, "I am out to get you," the only practical way to demonstrate partiality or conflict is by circumstance and inference. To require a criminal defendant to prove actual bias would ensure that no one could ever succeed in showing that their Fourteenth Amendment rights have been transgressed by a partial judge.."/(Attachments: #5/A and #7-7/G)...

*******************************************************************

**GROUNDS FOR RELIEF** - *continued*

danger to the public," which, of course, we decline to do. Indeed, the Court of Appeals, at ¶21 asserts: "In short, once eligible for release to extended supervision ... [Paape] will likely seek to prove that he is no longer a danger to the public by showing that his criminal conduct was influenced by his youth (Attachment - #1/J); [Attachment - #8/A].

If you did not exhaust your state remedies on Ground Two, explain why.

Not Applicable, Issued Embodied In Issue(s) Presented To Both Circuit Court (Attachments: #3-3/H), and Court Of Appeals, District Two Appellate Litigation (Attachments: #1/I-J).

Ground Three Does The "Cumulative" Operation Of §973.014(1g)(a)2 Wis. Stats., And §302.114 Wis. Stats., In Their "Aggregated" Operational Practice Deprive "Juvenile" Offender(s) Waived Into Adult Court Prosecution Jurisdiction Of A Fundamentally Fair 6th, 8th And 14th Amendment Rights Procedural 5th And 14th Amendment Due Process Clause "Sentencing" Protections Applicable To Such Under Age Defendant(s)?

Supporting **FACTS** *(Briefly summarize the facts without citing cases or law.)*

As was submitted initially before the Milwaukee County Circuit Court, during the §974.02 Wis. Stats., 1st Appeal of Right, Post-Conviction Issue Exhaustion, by Counsel. The "Actual" operation of Wisconsin "Waiver" Allowance of such Young Juvenile Offender(s), as was Defendant Paape, at the Age of 13-Years and 08-Months Into Adult Criminal Prosecution Jurisdiction, When it comes to the Sentencing aspects thereof, Raises Serious Questions of Fundamental Fairness, In the "Adult" Court Sentencing Procedural Addresses to Provide Real and Meaningful Consideration to the Unique Mental Conditional Concerns, that Distinguish Juvenile Offenders from those of Mature Adults (Attachments: #3/A-3/H). A "Revised" Somewhat submission that was then exhausted before the Wisconsin State Court of Appeals, District #2, regarding the "Substance" of the Circuit Courts rejection of this "Waiver" issue included "Substantive" Due Process Protections "Sophistical" Denial(s) Involved in the Over-All Sentencing Process operations under §973.014(1g)(a)2 Wis. Stats., and the eventual ability to seek "Extended Supervision Release" under §302.114 Wis. Stats., Eligibility provision(s) (Attachments: #1/A-1/B). Which in Judicial actuality, sets forth Justification for the Sentence imposed here, that "Flies In The Face" of the Very Mental Shortcomings That "Mitogate" Against A Heavy Sentence Imposition In Such Juvenile Offender case procedures. A point the United States Supreme Court made note of, noting: "Because an aggravating factor under California [Continued On Page #-8/C-]

If you did not exhaust your state remedies on Ground Three, explain why.

Not Applicable - Issue Exhausted At All Levels Of State Post-Conviction/Appellate Review (Attachments: #3-3/H; #1/C-1/J, ¶¶5-18 and ¶¶19-23,; and Attachment - #2)..

GROUND TWO - [Supporting Facts] - Continued From Page #-8-:

but this asserted position of the State Court Of appeals, District #2, is contrary to the United States Supreme Court holdings on this very "Youth" crime commission situation. It was the duty of the Circuit court to address in a meaningful and actual consideration actuality manner, the "Juvenile" reality of the Defendant, of being 13-Years old at the time of this crime commission, and a 13-Year Old that the "Expert Clinical" Staff the Court had to undertake Mental Competency Examinations of this 13-Year Old Defendant (Attachments: #8, #9 and #10), all determined that Mr. Paape suffered an extreme low self-esteem actuality, thus was someone easily manpulated; as a condition of his strong need for acceptance.

Now, while the Court of Appeals, District 2 in its review of Wisconsin, Extended Supervision, "Petition To The Sentencing Court" concept. It was in truth, executed in a "Vacuum" of judicial data thereon, since to date, only 19-Years since the Truth-In-Sentencing Laws went into effect at Midnight on December 31, 1999, Not a Single Life Term Sentenced Defendant has yet to become Eligible for the Extended Supervision Release, "Petition To The Sentencing Court" Eligibility. Yet, the available "Facts" document, that all such sentenced Life Term Defendants, have already served more time than the majority of those sentenced under the Old Life Term "Parole Eligibility" Review scheme (Attachments: #7-7/G). Further, with the "Extended Supervision Eligibility" for Release, requires that the Defendant himself, "Petition" the Sentencing Court, within said Petition, demonstrating their individualized "Fitness:" for such Extended Supervision Release opportunity, the Statutes actual operation places a burden on the "Prisoner" that is judicially acknowledged to represent a litigation burden that most such Prisoner(s) will be unable to execute with and proficiency. Thus, this burden shifting actuality regarding this "Petition" opportunity here after serving 32-Years, renders this "Release" opportunity more of a judicial fraud, then a meaningful opportunity for Extended Supervision release possibility.

How, is it for all other Class of Felony Crimes, the Incarceration Initial Portion of the Sentence, is explicit-once that defendant reaches the Sentence Initial Incarceration Portion maximum point, he is then automatically Release to Extended Supervisoon. But with Class A Felony Charges, the "Defendant" after reaching the "Initial Incarceration" Portion of his Sentence, either the Statutory Minimum of 20-Years, or a greater amount so set by the Sentencing Court, allegedly based upon the Facts of the Defendants Prior Criminal History and/or Gruesomeness of the manner in which the crime was committed," the Defendant then is only allowed a long, long shot possibility of getting the Sentencing Judge to consider letting that Defendant back out into society. In a State such as Wisconsin, where study after study has acknowledged that the Judicial Branch is corrupted by Political aspects (Attachments: #11-11/A). A Release opportunity of this design, is a sham and a pretext at best, at worse it is a Life Without Discretionary Release imposition Loop-hole. As the United States Supreme Court has made clear, the "Juvenile" must be provided a "Meaningful" Opportunity for eventual release, thus

"To insure that a state-created [Extended Supervision Release] scheme serves the Public Interest purpose of rehabilitation and deterrence, the "Review" must be cognizant not only of the factors required by State Statute to be considered, but also the concepts embodied in the Constitution requiring Due Process of Law." This protection, requires that "[T]he inquiry look to the challenged provision, and not to any special circumstances that may mitigate its effect on the particular individual" (Attachments: #12-12/A). This undertaking, the Federal Law asserts, is "A [fact-intensive] inquiry to be conducted on an individual bases". The State Court of appeals, Review undertaking clearly is everything but this titled actuality (Attachments #1/I-I/J, ¶¶19-23).

As submitted in its Judicial Suuport presentation in the "Memorandum Of Points And Authorities" accompanying this "Ground Two" Issue submission of the $2254 Petition For Writ Of Habeas Corpus, the Wisconsin State Court of Appeals, District '2 review position is "Contrary" to the "Meaningful" Opportunity actuality mandated by the Clearly established law of the United States Supreme Court hereon; "There is no right under the United States Constitution to be conditionally released before the expiration of a valid sentence, and the States are under no duty to offer parole to their prisoners. When, however, a State creates a liberty interest, the Due Process Clause requires fair procedures for its vindication--and federal courts will review the application of those Constitutionally required procedures" (Attachment - #12/A).

This review is especially factual intense, when the Release Involves a 13-Years Old Juvenile, initial crime episode commission; when the initial "Burden" to even get the Sentencing Courts attention (a heavy burden for someone such as Petitioner, so noted the Seventh Circuit Court of Appeals, "An illiterate prisoner might find Wisconsin's system an insuperable obstacle--but then an illiterate prisoner would find a law library of no use either. Giving an illiterate the run of the stacks is like giving an anorexic a free meal at a three-star restaurant")/(Attachments: #8-10).

The Court of Appeals, overly simplicitic response to this Issue in the Last Decision here on the Merits (Attachment - #1/J, ¶21) of just telling the Sentencing Court, in the Petition 32-Years down the Road from his sentencing (Which is almost certainly to be a different Circuit Court Judge), that "He is no longer a Danger to the Public, because he is no longer the easily led astray and wanting to be accepted kid he was when this homicide was committed, is an "Unreasonable" application of the United States Supreme Court imposed duty of the receipt of a "Meaningful" Release opportunity for such "Juvenile" at the time of the crime commission involved individuals; indeed the Seventh Circuit Court of Appeals has noted: "It was suggested that we not worship at the altar of ritual in this regard, but deal with 'matters of reality'". I request that of this District Court for the United States Western District of Wisconsin review undertaking hereon.

*********************************************************************

GROUND THREE - [Supporting Facts] - Continued From Page #-8-:

law may include any factor that the judge reasonably deems relevant, the [DSL's] requirement that an upper term sentence be imposed only if an aggravating factor exists is comparable to Booker's require- ment that a federal judge's sentencing decision not be unreasonable." ... "Reasonableness, the Court went on to note, 'Is not, as the Black court would have it, the touchstone of Sixth Amendment analysis. The reasonableness requirement Booker anticipated for the federal system operates within the Sixth Amendment constraints delineated in our precedent, not as a substitute for those constraints'.."

Here, the Sentencing "Reasonableness" allowance under Section §973.014(1g)(a)2 Wis. Stats., operates in just such a fashion, it allows the Sentencing Judge the complete and sole allowance to deter- mine just what serves his desire to justify an Extended Supervision Release Date Eligibility beyond the State Legislature created 20- Year Minimum, that suits that Judges personal desire of "Crime Com- mission" Unusual Circumstance. I.e., "Gruesomeness;" State v. Seta- gord, 211 Wis.2d 397, 416, 565 N.W.2d 506, 514 (Wis. 1997)("The factors that a sentencing court considers when imposing a sentence are the same factors that influence the determination of parole eligibility. Borrell, 167 Wis.2d at 774"). A Sentence allowance found by the United States Supreme Court to be at odds with its own precedent related hereto; Cunningham v. California, 549 U.S. 270, 127 S.Ct. 856, 870 (2007)("Because the DSL allocates to judges sole authority to find facts permitting the imposition of an upper term sentence, the system violates the Sixth Amendment. It is comforting, but beside the point, that California's system requires judge deter- mened DSL sentences to be reasonable")/(Attachments: #1/A-1/B).

The United States Supreme Court precedent, as acknowledged by the Seventh Circuit Court of appeals, has made clear that: "The United states Constitution affords children rights that cannot always be equated with those of adults;" Hardaway v. Young, 302 F. 757, 763-764 (7th Cir. 2002). A point that the Circuit Court, as well the State Court of Appeals, appears to have a hard time rapping their collective judicial minds around; Graham v. Florida, 560 U.S. 48, 130 S.Ct. 2011, 2026 (2010)("Because juveniles have lessened culpability that are less deserving of the most severe punishments. As compared to adults, juveniles have a lack of maturity and an underdeveloped sense of responsibility; they are more vulnerable or susceptible to negative influences and outside pressures, includ- ing peer pressure, and their characters are not as well formed. These salient characteristics mean that it is difficult even for expert psychologists to differentiate between the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption"). Yet here, this Sentencing Court had the "Perfect" Two(2) Parties from which to make just such a "Differentiation". One, Defendant Paape, was following the Victims own "Blood" Kin Great Grand Son, whom had came up with a plan to Murder Her and Rob her of her valuables. The record documents that it was the Great Gand Son whom struck 25 out of the 27 Blows the Victim Suffered to her Arms, Neck, Head and Skull. That Defendant Paape, only struck Two(2) Half Hearted Blows with the Hammer he had been provided by the Great Grand Son, and only then after he was ordered to Hit the Victim by

the Great Grand Son (Tr. 08/13/2013, Pages #44-48). Together with
the Psychologists Expert findings, that Defendant Paape was of
Extreme Low Self--Esteem at this Age of 13-Years, easily led by
other more Dominant Peer(s), renders the Court of Appeals, Fact
conclusion, "Contrary" to the Legal Relevance they were entitled
by Supreme Court Precedent (Attachments: #1/A-1/B, ¶¶3); **Russell
v. Collins**, 998 F.2d 1267, 1291 (5th Cir. 1993)("In Johnson v.
Texas, the Supreme Court made clear that the mitigating factor of
a defendant's age is within the 'effective reach' of the second
special issue").

       Thus, it appears as if the Wisconsin Judicial System, simply
refuses to accept this controlling precedent sentencing mandate
of the United States Supreme Court; **Chapman v. State Of California**,
386 U.S. 18, 21, 87 S.Ct. 824, 826 (1967)("With faithfulness to
the Constitutional Union of the States, we cannot leave to the
Stats the formulation of the authoritive laws, rules, and remedies
designed to protect people from infractions by the States of feder-
ally guaranteed rights").

       **Secondly**, the alleged "Fair Opportunity" for eventual release
to "Extended Supervision" in its design operation at this point in
time, is a Sham. Indeed, for Defendants' sentenced under §973.014
Wis. Stats., Life Term imposition, it is also "Invidiously Discrimi-
natory," in that all other Class of Felonies in the State, are by
Law Automatically Released to Extended Supervision, once they have
served until their Extended Supervision Date of the Initial Incar-
ceration portion of their Over-all Sentence Designed Term. With
Only Class A Felonies required to be allowed only the opportunity
once they have served their Initial Incarceration portion of a
Minimum of 20-Years, or greater if specific aggregavting factors
are alleged found by the Sentencing Court under §973.014(1g)(a)2
Wis. Stats., sentence Triad scheme here involved, to "Petition"
for Release on Extended Supervision, after making an additional
showing of their personalized lack of future dangerness. A show-
ing that must be made without the Right of the Assistance of Counsel,
and/or access to Expert Psychologist; **Tennessee v. Lane**, 541 U.S.
509, 125 S.Ct. 1978 (2004)("Under the Due Process Clause of the
Federal Constitution's Fourteenth Amendment, ordinary considera-
tions of cost and convenience alone cannot justify a states fail-
ure to provide individuals with a meaningful right of access to
the courts"),

       Here, even under Chapter §980 Civil Commitment proceedings
regarding Sexual Violent Individuals, once they have served the
"Initial" Incarceration portion of their Truth-In-Sentencing,
Bi-furcated Sentence under §973.01 Wis. Stats., Statutory design,
they are entitled to a similar type Procedural Due Process Pro-
ceeding under §980.03(1) Wis. Stats., at Which "Counsel" is Appoint-
ed, if the Prisoner is Indigent, under §980.03(2)(a) Wis. Stats.,
with the Reviewing Circuit Court having the authority to Appoint
a Licensed Psychologist under §980.031(1) Wis. Stats., to conduct
an examination regarding that individuals "Future Dangerousness"
of a crime commission. Yet, Defendants' under §973.014(1g)/§302.114
Extended Supervision Petition review before such a Court, is left

to navigate this §302.114 Statutory proceeding the best they can, regardless of the material actuality, that this procedural situation is in fact, a continuation of the Original Sentencing proceeding of §973.014(1g)(a) Wis. Stats., Class A Felony Convictions Sentence imposition actuality; **Boddie v. Connecticut,** 401 U.S. 371, 378-379, 91 S.Ct. 780, 786-787 (1971)("The formality and procedural requisities for hearings required by Due Process Clause can vary, depending upon importance of the interest involved and nature of the subsequent proceeding"). Additional Time in prison, the United States Supreme Court has already concluded has "Sixth Amendment" significance; **Glover v. United States,** 531 U.S. 198, 203, 121 S.Ct. 696, 700 (2001)("Authority does not suggest that a minimal amount of additional time in prison cannot constitute prejudice. Quite to the contrary, jurisprudence suggests that any amount of actual jail time has Sixth Amendment significance"). I.e., **State v. Borrell,** 167 Wis.2d 749, 482 N.W.2d 883, 891 (Wis. 1992)("Prisoner's hope for discretionary parole release warrants minimal protection under the Due Process Clause").

Indeed, in a line of cases beginning with **Griffin v. Illinois,** 251 U.S. 12, 76 S.Ct. 585 (1956), the United States Supreme Court examined procedural schemes after conviction and sentence under the principle that justice may not be conditioned on ability to pay; **Ross v. Moffitt,** 417 U.S. 600, 605-609, 94 S.Ct. 2437 (1974). Even though "[a]bsolute equality is not required," **Douglas v. California,** 372 U.S. 353, 357, 83 S.Ct. 814 (1963); The Fourteenth Amendment requires that indigent defendants be placed on a substantially equal footing through the appointment of counsel at the State expense: **McCoy v. Count Of Appeals Of Wis. Dist. 1.,** 486 U.S. 429, 438, 108 S. Ct. 1895 (1988). As the United States Supreme Court set forth in the holdings of **Smith v. Ronbins,** 528 U.S. 259, 292-293 n.1, 120 S.Ct. 746, 768 n.1 (2000)("The Griffin line of cases has roots in both due process and equal protection. see MI.B. v. S.L.J., 519 U.S. 102, 120 117 S.Ct. 555, 136 L.Ed.2d 473 (1996), but we have noted that "[m]ost decisions in this area have rested on an equal protection framework.-..," Bearden v. Georgia, 461 U.S. 660, 665, 103 S.Ct. 2064, 76 L.Ed. 2d 341 (1974)"). This protection, with the acknowledged difficult judicial showing that is required for a Defendant to begoi to have any opportunity to be considered for Release to Extended Supervision, under this different "Procedural" execution only applied to Class A Fenlony Sentencing under the Truth-In-Sentence Bi-furcated Initial Period of Incarceration and Extended Supervision Release scheme, must be entitled to a fundamental fair opportunity playing field (Attachments: #1/I, ¶¶21-22); **McClesky v. Kemp,** 481 U.S. 279, 343, 107 S.Ct. 1756, 1793 (1987)("Those whom we would banish from society or from the human community itself often speak in too faint a voice to be heard above society's demand for punishment. It is the particular role of courts to hear these voices, for the Constitution declares that the majoritorian chorus may not alone dictate the conditions of social life").

The defendant has a legitimate interest in the character of the procedure which leads to the imposition of sentence, even if he may have no right to object to a particular result of the sentencing process; **Gardner v. Florida,** 430 U.S. 349, 358, 97 S.Ct. 1197, 1205 (1977). This entitled right to question, challenge and adjudicate,

applies regardless whether or not the full effect of such a Sentencing scheme is yet to be applied in its full volume against the Defendant; contrary to the State Court Of Appeals, opinion regarding such challenges judicial protection entitlement (Attachment - #1/J, ¶22); Hays v. City Of Urbana, Ill., 104 F.3d 102, 103-104 (7th Cir. 1997)("Person who must comply with law or face sanctions has standing to challenge its application to him, even if threat of prosecution is not immediate--indeed, even if law is not yet in effect"). I.e., Abbott Laboratories v. Gardner, 387 U.S. 136, 153-154, 87 S. Ct. 1507, 1517-1519 (1967).

As the United States Supreme Court has acknowledged, and I believe applicable to this "Cumulative" Ground Three Sentencing related operations Issue, of the Class A, §973.014(1g)(a)2 Increased Extended Supervision Release Date "Eligibility" imposition and §302.114 "Petition" To The Sentencing Court once Increased Extended Supervision Release Date "Eligibility" is Reached, with the "Burden" upon such Without Counsel and/or Expert Witnesses access for "Indigent" Defendants, demonstration to that Sentencing Court, that the Defendant is No Longer A Danger To Society. The "De Facto" Life With Any Actual Meaningful Early Release Possibility In Fact Operations of these Law(s), is shown; Bourjaily v. United States, 483 U.S. 171, 179-180, 107 S.Ct. 2775, 2781 (1987)("Individual pieces of evidence insufficient in themselves to prove a point, may in cumulation prove it")("Attachments: #11-11/A and #12-12/A") and Romer v. Evans, ___ U.S. ___, 116 S.Ct. 1620, 1628 (1996)("A desire to harm a politically unpopular group cannot constitute a legitimate government interest")/(#5-7/F).

Thus, was it in fact, the Legislative Intent with its Class A Felony Sentencing Scheme, as being required to be the Only Defendants' that are required to Petition the Sentencing Court for its Authorization to Extended Supervision Release access, to sophistically create a means that imposed a natural life sentence service actuality, while asserting otherwise; Withrow v. Larkin, 421 U.S. 35, 47, 95 S.Ct. 1456 (1975)("Due Process does imply honesty in the process")/(Attachments: #1/I-1/J, ¶¶19-23).

********************************************************************

Petitioner, pro se, acknowledges that it is the general rule not to include Case Law Citation in the "Grounds" submission, but this "Cumulative" Effect Issue submission of the Ground One and Ground Two Issue(s) litigation in this §2254 Petition, is founded upon Case Law precedent created Constitutional Rights "Sophistical" Denial in the operational design of Wisconsin Statutes Section(s) §973.014(1g)(a)2 and §302.114 applications to this Defendant, his actuality of being 13-Years Old at the time of his "Party To A Crime" involvement commission here, the Increased Extended Supervision release Date "Eligibility" opportunity, and the Evidentiary burden required for its genuine receipt possibility from the Courts review of any such Petition; especially in a state where no Pardons or Sentence Commutations are allowed until the Prisoner has been release: Delvecchio v. Illinois Dept. Of Corrections, 8 F.3d 509, 515 (7th Cir. 1993)("The Supreme Court has repeatedly answered this very question by noting that the appearance of justice is as important as the reality of justice, or at least important enough that its absence violates due process").

**GROUNDS FOR RELIEF** - *continued*

Ground Four___**None Submitted.**_____

_____

_____

Supporting **FACTS** *(Briefly summarize the facts without citing cases or law.)*

_Not Applicable._____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

If you did not exhaust your state remedies on Ground Four, explain why.

_Not Applicable._____

_____

_____

## V.   PRIOR FEDERAL CHALLENGES

A. Have you previously filed any type of petition, application, or motion **in a federal court** regarding the *state conviction that you are challenging in this petition?*

  ☐ Yes        x☒ No

If yes, attach the decision(s) that resolved your prior federal court challenge and answer the following questions:

1. Name of court ____**None Filed.**_____

**PRIOR FEDERAL CHALLENGES** - *continued*

2. *Docket or case number*  Not Applicable.

3. Date of filing  N/A.

4. Type of petition, application, or motion filed  None Submitted.

5. Grounds raised  None Involved

6. Did you receive a hearing where evidence was given on your petition, application, or motion?

   ☐ Yes    ☒ No

7. Result  None Involved.

8. Date  00/00/0000

9. Did you appeal the action taken on your first federal petition, application, or motion to a federal court of appeals?

   ☐ Yes    ☒ No

   If yes, attach the decision(s) that resolved your appeal and answer the following questions:

   a. Name of court  None Involved.

   b. *Docket or case number*  N/A.

   c. Date of filing  00/00/0000

   d. Type of petition, application, or motion filed  None Submitted.

   e. Grounds raised  None Involved.

**PRIOR FEDERAL CHALLENGES - *continued***

    f.  Result   None Obtained.

    g.  Date    00/00/0000

B.  Did you file a petition for certiorari in the United States Supreme Court?

    ☐ Yes    ☒ No

If yes, attach the decision(s) that resolved your petition for certiorari and answer the following questions:

1.  Date of filing petition for certiorari   00/00/0000

2.  Grounds raised    None Submitted.

3.  Result    None Obtained.

4.  Date    00/00/0000

## VI.  REPRESENTATION

A.  Give the name and address of each attorney who represented you in the following:

1.  At preliminary hearing Ms. Chris Petros, State Public Defender; Ms. June Spoerl, Assistant Public Defender. 1326 North 5th Street, Sheboygan; Wisconsin. 53081 (County Public Defender Office)

2.  At arraignment and plea hearing Ms. Chris Petros, P.D., and Ms. June Spoerl, A.P.D., 1426 North 5th Street; Sheboygan; Wisconsin. 53081. Sheboygan County State Public Defender Office.

3.  At trial Ms. Chris Petros, State Public Defender (Sheboygan County "Satellite" Office); Ms. June Spoerl, Assistant State Public Defender; 1426 North 5th Street. Sheboygan; Wisconsin. 53081

4.  At sentencing Ms. Chris Petros, State Public Defender (Sheboygan County "Satellite" Office); Ms. June Spoerl, Assistant State Public Defender, 1426 North 5th St., Sheboygan; Wisconsin. 53081

5.  On direct appeal Mr. Edward Hunt [State Bar No. 1005649], Hunt Law Group, S.C., 342 North Water Street, Milwaukee; Wisconsin. 53202 (State Public Defender Office, Private Counsel Appointed).

**REPRESENTATION** - *continued*

    6.  In any state post-conviction proceeding  Mr. Edward J. Hunt [State Bar No. 1005649], Hunt Law Group, S.C. 342 North Water Street, Milwaukee; Wisconsin. 53202

    7.  On appeal from any ruling against you in a state post-conviction proceeding  Mr. Edward J. Hunt [State Bar No. 1005649], Hunt Law Group, S.C. 342 North Water Street; Milwaukee, Wisconsin. 53202.

## VII. REQUEST FOR RELIEF

State exactly what you want the court to do for you.

      Petitioner, moves this United States District Court for the Western District of Wisconsin, for the "Initial" scheduling of an Evidentiary Development-- opportunity regarding the "Sophistical" Acts of the Sentencing Judge "Work Around" the United States Supreme Court "Age" Consideration "In Fact" during the Sentencing Process, With All such "Facts" justifying an Extended Supervision"Release Eligibility Date Imposition Determination Being Required To Be "Explicitly" Set Forth In The Defendant "Juveniles" Sentencing Hearing Record. That Further, §302.114 "Extended Supervision" Petition, Be Found Constitutional/Fundamentally Unfair In Its Facie/Applied Actualities.

## VIII. DECLARATION UNDER PENALTY OF PERJURY

I, the undersigned, hereby declare under penalty of perjury that the foregoing information is true and correct.

Signed this __11'ʰ__ day of __December__ , 20 __18.__

              _Nathan Paape_
              Signature of Petitioner
              Nathan J. Paape       #605650-A.
              Columbia Correctional Institution/CCI.

              [Petitioner], Pro Se Hereon.
              (Signature of lawyer, if any)

If you are signing the petition and are not the petitioner, state your relationship to the petitioner and explain why the petitioner is not signing this petition.

    Not Applicable Hereto Filing Execution.

**IX.** <u>**CERTIFICATE OF INMATE MAILING**</u> - *Optional*

If you deposit your petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in your prison/institutional/jail mailing system and attach first-class postage pre-paid, and complete and sign this statement, you will establish the filing date as the date of deposit in that mailing system.

I, the undersigned, hereby declare under penalty of perjury that I placed this petition for a writ of habeas

corpus under 28 U.S.C. § 2254 in the prison/institutional/jail mailing system /E-Mail Filing

Program On:_____December 11ᵗʰ_____, 2018._____.
                          *(month, day, year)*

Via Hand Delivery Of The §2254 Petition And Memorandun Of Authorites To CCI Staff.

Signed this _____11ᵗʰ_____ day of_____December_____, 20_18_.


                              _Nathan Paape_____
                              Signature of Petitioner
                              Nathan J. Paape          #605650-A.
                              Columbia Correctional Institution
                              Post Office Box 900 / CCI-Unit-#01.
                              Portage;   Wisconsin.   53901-0900

                              [Pro Se Petitioner].


<u>Materials Prepared By:</u>
Oscar B. McMillian #042747-A.
DOC: 309.155 Legal Assistance
Columbia Correctional Institution
Post Office Box 900 / CCI-Unit-#01.
Portage;   Wisconsin.   53901-0900