IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

NATHAN PAAPE,

      Petitioner,

v.

LARRY FUCHS,[1] Warden,
Columbia Correctional Institution,

      Respondent.

OPINION AND ORDER

Case No.  18-cv-1028-wmc

In 2012, thirteen-year-olds Nathan Paape and Antonio Barbeau were charged with first-degree intentional homicide for the murder of Barbeau's great-grandmother, a crime for which they were both later convicted and sentenced to life in prison.  Presently confined at the Columbia Correctional Institution, Paape has applied for federal habeas corpus relief, challenging the sentencing court's determination that he is ineligible for release on extended supervision until he serves at least 30 years of his sentence, at which time he will be 45 years old.  (Petition (dkt. #1).)  Although Paape's grounds for relief are somewhat difficult to make out from his petition and supporting brief, he mainly argues that:  (1) his sentence was too harsh; and (2) Wisconsin's extended-release hearing procedure denies him a meaningful opportunity to demonstrate that he has matured and rehabilitated, contrary to United States Supreme Court precedent.

As explained in more detail below, however, Paape has not met his heavy burden of proof for collateral, federal relief, which requires him to show that the Wisconsin Court of

---

[1] Pursuant to Rule 2(a) of the Rules Governing Section 2254 Cases, Larry Fuchs, the current warden at the institution where petitioner is in custody has been substituted for the former warden.

Appeals *either* unreasonably applied clearly established federal law *or* unreasonably determined the facts when it rejected his challenges to his sentence. Indeed, that decision and others attached to Paape's petition demonstrate that he *cannot* do so. Accordingly, his petition must be summarily dismissed.

BACKGROUND[2]

The Wisconsin Court of Appeals described the underlying facts as follows:

On September 17, 2012, thirteen-year-olds [Antonio] Barbeau and Nathan A. Paape agreed to murder Barbeau's great-grandmother, Barbara Olson, because she "was somewhat rich and could be killed for money." Later that day, they went to Olson's house. Barbeau brought a hatchet; Paape brought a hammer. When Olson greeted them at the door and then turned her back, Barbeau struck Olson with the blunt end of the hatchet, knocking her to the floor. Barbeau struck Olson several more times with the blunt end of the hatchet, while Olson tried to cover her head and cried for him to stop. Barbeau called for Paape's help, and Paape struck Olson twice in the head with the hammer. Using the sharp end of the hatchet, Barbeau struck Olson, lodging the blade in her head. In total, according to the medical examiner, Olson was struck twenty-seven times, eighteen of which were blows to the head. Realizing that Olson was now dead, Barbeau and Paape searched her house, taking jewelry, a purse, and money.

Barbeau and Paape talked for several hours, devising a plan to conceal their murder of Olson. They wanted to put Olson in the trunk of her car, but were unable to lift her and, instead, left her in the garage. They wiped down portions of the house, placed the wipes in bags, and put the bags, along with the hammer and hatchet, and proceeds from the house into Olson's car.

_____

[2] The following facts are principally drawn from the Wisconsin Court of Appeals' unpublished decision on Paape's direct appeal, as well as its published decision on Barbeau's direct appeal. *State v. Barbeau*, 2016 WI App 51, 370 Wis. 2d 736, 883 N.W.2d 520; *State v. Paape*, 2015AP2462-CR, 2017 WI App 50, 377 Wis. 2d 336, 900 N.W. 2d 871 (Wis. Ct. App. June 28, 2017) (unpublished opinion); (dkt. #1-1). Paape also attached to his petition copies of: (1) the state trial court's November 10, 2016, order denying Paape's motion for post-conviction relief; (2) the Wisconsin Court of Appeals' June 28, 2017, decision affirming that order and rejecting his direct appeal; (3) the Wisconsin Supreme Court's October 9, 2017, order denying his petition for review; (4) the Wisconsin Court of Appeals' June 22, 2016, decision in *State v. Barbeau*, 2014AP2876-CR; and (5) a handful of miscellaneous documents. (Dkt. #1, Atts. 1-12.)

Paape put a pillow on the driver's seat so that he could see above the steering wheel, and then drove the car with Barbeau in the passenger seat back to Sheboygan, parking near a church, a few blocks from Paape's home.

The following day Barbeau and Paape returned to the vehicle. They drove it to a bowling alley and then walked to a pizzeria where they ate pizza. They went to a supermarket and purchased gloves and cleaning wipes. Then they returned to the car, wiped down the interior for fingerprints and blood, and left the car keys in the front seat with the jewelry in sight in the hope that someone would steal the car and be blamed for the murder of Olson. Barbeau and Paape took Olson's purse, which contained $150. The police later found Olson's purse containing her identification in a sewer a few houses away from Paape's home. The police also located Olson's car, finding the hammer and hatchet inside, jewelry, and a school paper containing the name "Nate."

*State v. Barbeau*, 2016 WI App 51, ¶¶ 2-4, 370 Wis. 2d 736, 745–47, 883 N.W.2d 520, 524–25.[3]

Paape and Barbeau were charged, separately, as parties to the crime of first-degree intentional homicide under Wis. Stat. § 940.01(1)(a), a class A felony for which the penalty is life imprisonment.[4]  Wis. Stat. § 939.50(3)(a).  The trial court denied Paape's request for a reverse waiver to juvenile court, and his case was ultimately tried to a jury, which found him guilty.  Barbeau pleaded no contest.

Under Wisconsin law, a court sentencing a defendant to life imprisonment for a crime committed on or after December 31, 1999, is directed to

---

[3] Like Paape, Barbeau argued on appeal that Wisconsin law deprived him of a meaningful opportunity to obtain release to extended supervision, in violation of established Supreme Court precedent.  The Wisconsin Court of Appeals rejected this and other challenges to his sentence. *Barbeau*, 2016 WI App 51, ¶ 50.  Barbeau later sought federal habeas relief from the federal district court in the Eastern District of Wisconsin, which denied the petition after finding the Wisconsin Court of Appeals' decision "entirely consistent" with controlling Supreme Court law.  *Barbeau v. Foster*, No. 17-CV-1744-JPS-JPS, 2018 WL 6831143, at *4 (E.D. Wis. Dec. 28, 2018).

[4] In Wisconsin, a juvenile alleged to have committed first-degree intentional homicide is subject to adult court jurisdiction.  Wis. Stat. § 938.183(1)(am).

make an extended supervision eligibility date determination regarding the person and choose one of the following options:

      1. The person is eligible for release to extended supervision after serving 20 years.

      2. The person is eligible for release to extended supervision on a date by the court. Under this subdivision, the court may set any later date than that provided in subd. 1., but may not set a date that occurs before the earliest possible date under subd. 1.

      3. The person is not eligible for release to extended supervision.

Wis. Stat. § 973.014(1g)(a).

In Paape's case, the circuit court chose the second option, finding him eligible for release on extended supervision in 30 years.[5]  Accordingly, when Paape would be 45 years old, he will be eligible to "petition the sentencing court" for release to extended supervision, Wis. Stat. § 302.114(2), and file a copy of the petition on the prosecuting district attorney's office.  Wis. Stat. § 302.114(5)(am).  That office will have 45 days to respond.  *Id*.  After reviewing the petition, response, and any statement a victim may wish to provide concerning the proposed release, the circuit court can grant or deny the petition with or without a hearing.  Wis. Stat. §§ 302.114(5)(b), (c).  However, the court may not grant Paape's petition for release unless he shows "by clear and convincing evidence" that he is not a danger to the public.  Wis. Stat. § 302.114(5)(cm).

In imposing Paape's sentence, the court discussed the factors it considered.  As summarized by the Wisconsin Court of Appeals in its decision on Paape's direct appeal,

---

[5] At the sentencing hearing and in the judgment of conviction, the court erroneously stated that Paape would be eligible for "parole" consideration in 2045.  It later amended the judgment to state "extended supervision" instead of parole.

[the circuit court] noted that this crime was "very high on the scale of seriousness . . . even within the scope of first degree intentional homicide," pointing to the fact that this murder involved the use of a hammer or hatchet, and not the "squeeze of a trigger," which might have an element of "unreality," particularly for a young person.  Next, the court considered Paape's character.  Paape was thirteen years old at the time he committed the murder.  Paape "did not have an easy time growing up."  His father was imprisoned and was not involved in Paape's life.  Paape's mother struggled to support him.  Based on testing that was done, it appeared that Paape was "easily manipulated" and had a "strong need for acceptance."  To this point, Barbeau was the one who hit the victim first, and the court was "willing to accept that  … Paape was more the follower," making him less culpable than Barbeau to a small degree.  However, the court said, "[H]ow far do you follow someone when they ask you to do something that you know absolutely … is wrong."  The court reiterated that Paape was "still an adolescent" and, thus, the court "expect[s] there will be changes."  But, even if Paape's "executive brain function might improve, would he continue to be manipulated based upon other aspects of his personality," and to the point of following a person "in horrendous action?"  No one could say "at this particular time."  What was "foremost in the mind of [the] court" was "protection of the public."  The court needed to ensure that in the future Paape did not "follow someone else in some other horrendous act."  In addition, there was a need for general deterrence, to send a message to young people in the community who might be inclined to murder, that "there will be a serious consequence."

*State v. Paape*, 2017 WI App 50, ¶ 3.

After moving unsuccessfully for post-conviction relief, Paape appealed his sentence, arguing that Wisconsin's statutory sentencing scheme violated the Due Process Clause and the Eighth Amendment to the United States Constitution by imposing "de facto" life sentences on juvenile offenders, rather providing a "meaningful opportunity for release" as required by the Supreme Court's decisions in *Graham v. Florida*, 560 U.S. 48 (2010), *Miller v. Alabama*, 567 U.S. 460 (2012), and *Montgomery v. Louisiana*, 577 U.S. 190 (2016).  The Wisconsin Court of Appeals disagreed, however, finding that Wis. Stat. § 302.114 was not materially different from a parole hearing, on which the Supreme Court had "effectively put its imprimatur" in *Montgomery*.  *Paape*, 2017 WI App 50, ¶ 15, 377 Wis. 2d 336, 900

N.W.2d 871.   In particular, the court rejected Paape's argument that Wis. Stat. § 302.114's failure to provide for appointed counsel or state-funded expert witnesses rendered the statutory procedure meaningless, noting there is no constitutional right to appointed counsel or to state-funded expert witnesses at a parole hearing either.  *Id*. at ¶ 18.

The Wisconsin Court of Appeals also rejected Paape's argument that "Wis. Stat. § 302.114 deprives him of his right to a meaningful opportunity for release because 'the severity of the offense will always trump all other considerations,' leaving 'out of the analysis . . . the transient immaturity of youth, the diminished culpability of children, and the attendant circumstances of children.'"  *Id*. at ¶ 19.  The court explained:

> Whether an inmate is no longer a danger to the public is obviously informed by whether that inmate has matured and been rehabilitated. In other words, contrary to Barbeau's contention, there is more than "only one criterion for the release determination;" that criterion subsumes other inquiries. A lack of maturity and underdeveloped sense of responsibility in juveniles often leads to impetuous and ill-considered actions. Juveniles make rash decisions without reflecting on the harm their actions may have to others and to themselves. Over time, however, it is possible that these "deficiencies will be reformed," that the offender will mature, develop a greater sense of responsibility, and a greater capacity for reflection on the consequences of an action before taking it.

*Id*. at ¶ 20 (370 Wis. 2d 236, ¶ 47.)  In short, the court found that "once eligible for release to extended supervision ... [Paape] will likely seek to prove that he is no longer a danger to the public by showing that his criminal conduct was influenced by his youth."  *Id*. at ¶ 21 (quoting *Barbeau*, 370 Wis. 2d 736, ¶ 48.)

Finally, the court rejected Paape's argument that the severity of his offense would always take precedence over any other factor.   First, the court found the argument

amounted to "pure speculation." *Id*. at ¶ 22.  Second, the court was unwilling to assume that the sentencing court would refuse to fulfill its statutory obligation to consider whether the inmate had proven that he or she "is not a danger to the public." *Id*.

The Wisconsin Supreme Court subsequently denied Paape's petition for review without explanation.  Finally, his habeas petition is timely, having been filed within one year after Paape's conviction became final.  *See* 28 U.S.C. § 2244(d)(1)(A).

OPINION

Having reviewed his petition and supporting brief, the court understands petitioner's principal claim to be that the sentencing court failed to take his youth and other relevant factors into account and abused its discretion in imposing sentence.  In addition, petitioner reasserts his argument that Wisconsin's sentencing scheme for juveniles convicted of homicide offenses violates the Eighth Amendment's prohibition against cruel and unusual punishment, as well as the Due Process Clause of the Fifth and Fourteenth Amendments and right to counsel under the Sixth Amendment by failing to provide him a meaningful opportunity to obtain release.  Unfortunately for petitioner, none of these arguments are sufficient to prevail in federal court given the highly deferential standard that must be applied in reviewing a state court criminal conviction, even one involving a minor defendant.

## I.  Legal Standards Governing § 2254 Petitions

Generally, a federal court is authorized to grant habeas corpus relief to a state

prisoner only upon a showing that "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The court's ability to grant such relief is further limited by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which "significantly constrain any federal court review of a state court conviction." *Searcy v. Jaimet*, 332 F.3d 1081, 1087 (7th Cir. 2003).

Under AEDPA, habeas corpus relief for persons serving sentences imposed by state courts may not be granted on any claim that was adjudicated on the merits in state court proceedings, *unless* the adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court; *or* (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). "A decision is 'contrary to' clearly established federal law if the rule the decision applies differs from governing law set forth in Supreme Court cases. A decision involves an 'unreasonable application' of Supreme Court precedent if the decision, while identifying the correct governing rule of law, applies it unreasonably to the facts of the case." *Bailey v. Lemke*, 735 F.3d 945, 949-50 (7th Cir. 2013) (citing *Bell v. Cone*, 535 U.S. 685, 694 (2002), and *Williams v. Taylor,* 529 U.S. 362, 407 (2000)).

Under § 2254(d)(1), therefore, this court must apply these exacting, "highly deferential" standards to the decision of the last state court to adjudicate a given claim on the merits, *Williams v. Bartow*, 481 F.3d 492, 497-98 (7th Cir. 2007), which in this case is the Wisconsin Court of Appeals' ruling. *Burt v. Titlow*, 571 U.S. 12, 18 (2013). To prevail, the petitioner "must show that the state court's ruling on the claim being presented in

federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).  Put another way, so long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable, the federal habeas court must deny the petition.  *Woods v. Etherton*, 136 S. Ct. 1149, 1152 (2016).  In this way, unlike at the criminal trial below, the state court decision must "be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002); *Hartjes v. Endicott*, 456 F.3d 786, 792 (7th Cir. 2006).  Indeed, Section 2254(d) stops just short of "imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id*.  This is so because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id*. at 102-03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring)).  "If this standard is difficult to meet, that is because it was meant to be." *Harrington*, 562 U.S. at 102.

In addition to these substantive requirements, a state prisoner seeking federal habeas relief must overcome a number of procedural hurdles.  For example, before he may present his claims in a federal habeas petition, the state prisoner must already have "exhausted" his claims before the state courts, ensuring that those courts had the opportunity to rule on any federal claims first.  28 U.S.C. § 2254(b)(1); *Perruquet v. Briley*, 390 F.3d 505, 513 (7th Cir. 2004) (requiring constitutional claims to be brought to each appropriate state court).  If a petitioner has exhausted his state court remedies, but failed to present his federal claims along the way, this omission constitutes a "procedural default"

that bars a federal court from considering the claim unless the petitioner can show either: (1) "cause for [his] default and prejudice resulting therefrom"; or (2) a resulting "miscarriage of justice" if the federal court does not consider the merits of his claim. *Id*. at 514.

Finally, habeas corpus petitions must meet heightened pleading requirements under Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts, with federal courts authorized to dismiss summarily any habeas petition and attached exhibits that "either fail to state a claim or are factually frivolous" under Rule 4. *Small v. Endicott*, 998 F.2d 411, 414 (7th Cir. 1993).

## II.  Clearly Established Federal Law Concerning Juvenile Sentences

The Eighth Amendment's ban on cruel and unusual punishment has been understood to require "some degree of sentencing proportionality." *Henry v. Page*, 223 F.3d 477, 482 (7th Cir. 2000) (citing *Solem v. Helm*, 463 U.S. 277, 290-92 (1983)).  Specifically, in a series of relatively recent cases, the United States Supreme Court has considered how courts should apply that general principle to sentences involving juveniles.  Beginning in 2010, the Court held in *Graham v. Florida*, 560 U.S. 48, 68 (2010), that the Eighth Amendment's ban on cruel and unusual punishment prohibits states from imposing life without parole on juvenile *non*-homicide offenders.  560 U.S. at 74.  As a result, the Court explained, "A State is not required to guarantee eventual freedom," but must provide "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation."  *Id*. at 75.  However, the Court chose not to develop this concept further

in *Graham*, expressing leaving it to the states "in the first instance, to explore the means and mechanisms for compliance." *Id*.

Two years later, in *Miller v. Alabama*, 567 U.S. 460 (2012), the Supreme Court again held that the Eighth Amendment "forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders," except this time extending the requirement to juveniles convicted of homicide as well. *Id*. at 479. Still, the Court declined to hold in *Miller* that a court could *never* sentence a juvenile convicted of homicide to life without parole; instead, lower courts were directed "to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id*. at 480.

More recently, the Supreme Court held in *Montgomery v. Louisiana*, 277 U.S. 190, 206 (2016), that *Miller* had announced a new, substantive rule of constitutional law and, therefore, should be applied retroactively. In particular, the Court explained that under *Miller*, life without parole was an excessive sentence for "juveniles whose crimes reflected only transient immaturity," as opposed to "the rare juvenile offender" whose crimes reflect irreparable corruption. *Id*. at 734. In giving *Miller* retroactive effect, however, the Court also held that a state could permit juvenile homicide offenders to be considered for parole, rather than requiring their resentencing. *Id*. at 736.

Finally, in *Jones v. Mississippi*, -- U.S. --, 141 S. Ct. 1307, 1315 (2021), the Supreme Court recently clarified that neither *Miller* nor *Montgomery* should be read to *require* a sentencing court to make a particular factual finding of permanent incorrigibility before sentencing a murderer under 18 to life without parole, so long as the court considered the

11

defendant's youth and had discretion to impose a lesser punishment.

## III.  Petitioner's Substantive Claims

### A.  Claim One:  "Procedural Due Process"

With that background as to the standard of review and developments in federal constitutional law as to the criminal sentencing of a minor to life in prison for commission of a homicide, petitioner first argues that the state sentencing court abused its discretion and failed to account for his youth in determining that he should not be eligible for release with extended supervision until serving 30 years in prison.  As an initial matter, this claim is not properly asserted in this federal habeas proceeding because petitioner did not present it to the Wisconsin state courts during the postconviction proceedings or on appeal.  While the court could stop here, it seems appropriate to also point out that this claim would not afford petitioner federal habeas relief even if he *had* exhausted his state remedies.  *See* 28 U.S.C. § 2254(b)(2) (court may deny habeas application on merits notwithstanding applicant's failure to exhaust state court remedies).

First, nothing the United States Supreme Court said in *Graham* and its progeny precludes a court from requiring a juvenile to serve a long prison sentence before becoming eligible for release, especially upon conviction for commission of a homicide.  Indeed, under the Supreme Court's now well-established law, a court need not provide a juvenile offender convicted of homicide, as petitioner was here, *any* opportunity for release, so long as the court had discretion to impose a lesser sentence and considered the offender's youth in doing so.  *See Jones*, 141 S. Ct. at 1314 ("[I]n *Miller* in 2012, the Court allowed life-without-

parole sentences for defendants who committed *homicide* when they were under 18, but only so long as the sentence is not mandatory[.]") (emphasis in original); *Miller*, 567 U.S. at 473 ("To be sure, *Graham*'s flat ban on life without parole applied only to nonhomicide crimes ....").

Second, petitioner acknowledges that under Wis. Stat. § 973.014(1g)(a), the sentencing court was expressly authorized to exercise discretion in imposing a release eligibility date "after serving 20 years," serving a longer period, *or* not being eligible for release at all.  (Br. in Supp. (dkt. # 2) 9.)  As previously discussed, "in non-capital felony convictions, a particular offense that falls within legislatively prescribed limits will not be considered disproportionate unless the sentencing judge has abused his discretion." *Henry*, 223 F.3d at 482.  Although petitioner argues that the sentencing court abused its discretion by failing to consider his youth, that claim is patently contradicted by excerpts from that court's statements *at* sentencing, which were expressly cited by the Wisconsin Court of Appeals and quoted earlier in this opinion.  As those excerpts establish definitively, the sentencing court *did* consider petitioner's age, including among other things noting that: he was "still an adolescent"; the court "expect[ed] there will be changes"; and his "executive brain function might improve."  *See also* Ord. Denying Mot. for Post-Conviction Relief (Dkt. # 1-3), at 5 (acknowledging that a young person might not understand consequences of his actions, but finding "events surrounding the death of the victim in this case are such that even a very young child would be quite aware of the consequences").  While also noting that petitioner was likely the "follower," was easily manipulated, and had had a hard time growing up, the court found, therefore, that given the petitioner's active role in

a truly horrific, premeditated and brutal murder of an elderly person with a hatchet and hammer, a lengthy sentence was appropriate, albeit one with a chance for release under extended supervision after 30 years.

Nothing in the petition, its attachments, or the supporting brief suggests that the court failed to exercise discretion here, much less abused it.  To the contrary, it is plain that the court exercised reasonable discretion, considered the relevant sentencing factors, and imposed a sentence authorized by state law.  Petitioner's mere disagreement with the sentence received is not enough to show that the sentence was imposed in violation of the Constitution or laws of the United States, and certainly provides no basis for this federal court to interfere with the decision of the Wisconsin Court of Appeals in affirming the sentencing court's exercise of discretion by issuance of an extraordinary writ.

### B.  Claims Two and Three:  "De Facto" Life Sentence

Although stated as two, separate claims by petitioner, claims two and three essentially re-argue a claim petitioner raised in the Wisconsin courts, namely -- that Wis. Stats. §§ 973.014(1g)(a)2 and 302.114 operate together to deprive petitioner of a "meaningful opportunity for release on extended supervision based on demonstrated maturity and rehabilitation."  More specifically, petitioner points out that unlike Wisconsin prisoners serving non-life sentences, he is not automatically entitled to release after serving 30 years, but rather must take it upon himself to petition the court for release. Wis. Stat. § 302.114(2).  Moreover, after becoming eligible for petition, he must convince the court "by clear and convincing evidence" that he is not a danger to the public, all

without the assistance of court-appointed counsel or experts.  Wis. Stat. § 302.114(5)(cm). As he did before the Wisconsin Court of Appeals, petitioner argues that these barriers combine to deny him a "meaningful opportunity" for release that the Supreme Court has deemed mandatory for juveniles.

Unfortunately for petitioner, he can neither show that the Wisconsin Court of Appeals' decision affirming his sentence was contrary to, nor an unreasonable application of, clearly established federal law.  As noted previously, there is *no* clearly established federal law that requires a state to provide a meaningful opportunity for release to juvenile *homicide* offenders.  The meaningful-opportunity-for-release requirement was established in *Graham*, which considered the constitutionality of a life-without-parole sentence for a juvenile convicted of non-homicide offenses.  *See* 560 U.S. at 52-53 ("The issue before the Court is whether the Constitution permits a juvenile offender to be sentenced to life in prison without parole for a nonhomicide crime.").

Moreover, even if *Graham* applied to petitioner's sentence, the Supreme Court has not said precisely what would constitute a "meaningful opportunity" to obtain release based on demonstrated maturity and rehabilitation, and as also noted earlier, instead left it to the states "in the first instance, to explore the means and mechanisms for compliance." *Graham*, 560 U.S. at 75.  Because none of the Supreme Court's cases confront the specific question presented by this case -- namely, whether Wis. Stat. § 302.114 affords juveniles serving life sentences with a meaningful opportunity to obtain release -- the Wisconsin Court of Appeal's decision is simply not "contrary to" any holding from the United States Supreme Court.  *Woods v. Donald*, 575 U.S. 312, 317 (2015) (if no Supreme Court decision

confronts the specific question presented by a state prisoner's federal habeas petition, then the state court's decision could not be "contrary to" any holding from the Supreme Court).

For the same reason, petitioner cannot show that the Wisconsin Court of Appeals "unreasonably applied" controlling Supreme Court precedent when it concluded that Wis. Stat. § 302.114 satisfied the federal constitutional requirement that all but the most depraved juveniles convicted of homicide have a meaningful opportunity to obtain release. Particularly instructive on this point is *Virginia v. LeBlanc,* 137 S. Ct. 1726 (2017), in which the Court held that a Virginia trial court reasonably applied *Graham* in finding that state's geriatric release program had provided a meaningful opportunity for juvenile *non*-homicide offenders to obtain release based on demonstrated maturity and rehabilitation. *Id*. at 1729. In reversing the Fourth Circuit's grant of habeas relief, the Supreme Court expressly held that it was not objectively unreasonable for the state court to conclude the requirements of *Graham* were met "because the geriatric release program employed normal parole factors." *Id.* Although it *might* be the "logical next step" from *Graham* to hold that such a geriatric release program did *not* satisfy the Eighth Amendment, the Court obviously found "reasonable arguments" to the contrary and, therefore, found the state court's decision could not be disturbed on federal habeas review. *Id*.

The same holds true in this case. As detailed above, the Wisconsin Court of Appeals, interpreting its own state statutes, deemed it "obvious" that the public danger inquiry under Wis. Stat. § 302.114 was broad enough to allow consideration of a variety of factors, including whether the inmate had matured and been rehabilitated. Further, petitioner has not supported his argument to the contrary with anything other than his

own speculation. Finally, the court rejected the argument that the absence of a provision allowing for court-appointed counsel and state-paid experts was fatal to the statutory scheme, pointing out that neither of these things were normally provided at a parole hearing, much less mandated by the Sixth Amendment.

Again, assuming for the sake of argument that *Graham* even applies here, these were all good reasons to conclude that Wis. Stat. § 302.114 was similar enough to a parole hearing to meet the requirements of *Graham*. Regardless, the Wisconsin Court of Appeals did not "diverge so far from *Graham*'s dictates as to make it 'so obvious that . . . there could be no 'fairminded disagreement''' about whether the state court's ruling conflicts with Supreme Court case law. *LeBlanc*, 137 S. Ct. at 1729 (quoting *White v. Woodall*, 572 U.S. 415, 427 (2014)); *see also Sanders v. Eckstein*, 981 F.3d 637, 643 (7th Cir. 2020) (Wisconsin Court of Appeals did not unreasonably apply *Graham* in determining that juvenile non-homicide offender's chance of parole at age 51—twelve years before his expected end of life at 63— "respects *Graham*'s requirement of a 'meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.'"); *Barbeau v. Foster*, No. 17-CV-1744-JPS-JPS, 2018 WL 6831143, at *4 (E.D. Wis. Dec. 28, 2018) (finding Wisconsin Court of Appeals' identical ruling in Barbeau's case "entirely consistent" with *Graham* and *Miller*.). As such, petitioner has not and cannot meet his heavy burden of showing this is the rare case warranting federal habeas relief.

## IV. Denial of Certificate of Appealability

Having carefully reviewed the petition and its attachments, the court discerns no

colorable grounds upon which habeas relief can be granted.  In particular, the record makes plain and beyond reasonable dispute that in choosing the sentence that it did, the state sentencing court accounted for petitioner's youth, lack of maturity, upbringing, and role in the offense. Weighing these factors against the depraved, senseless, and brutal nature of this murder, the court still determined that petitioner should serve a minimum of 30 years in prison, a sentence authorized under Wisconsin law.  Because the court properly exercised its discretion, this federal court has no legal authority to disturb the sentence imposed. Moreover, fair-minded jurists certainly could agree with the Wisconsin Court of Appeals that Wis. Stat. § 302.114 affords petitioner a "meaningful opportunity" to demonstrate that he has matured and rehabilitated.  As a result, petitioner cannot show that he is in custody in violation of his federal constitutional rights.

Having disposed of this petition, the court must decide whether to issue a certificate of appealability. Rule 11(a), Rules Governing § 2254 Petitions. The certificate of appealability may issue only if the applicant makes a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).  If the court issues a certificate of appealability, it must indicate on which specific issue or issues the petitioner has satisfied the "substantial showing" requirement.  28 U.S.C. § 2253(c)(3).  Here, this court concludes that reasonable

jurists could not debate the outcome, and the petitioner has not shown the denial of any constitutional right.  Accordingly, a certificate of appealability will be denied.  **Should petitioner wish to appeal, therefore, he must file a notice of appeal with the Clerk of this Court within thirty days of the date of this order and request that the Court of Appeals issue a certificate of appealability.**

ORDER

IT IS ORDERED that:

1.  The clerk of court is directed to substitute Larry Fuchs, warden of Columbia Correctional Institution, as the respondent in this case.

2.  Nathan Paape's petition for a writ of habeas corpus is DENIED, and his case is DISMISSED with prejudice.

3.  No certificate of appealability shall issue.

Entered this 13th day of June, 2022.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge